**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

VALERIE LANEY,

Plaintiff,

v. Case No. 5:23-cv-235-TKW-MJF

TPUSA, INC.,

Defendant.
_________________________________/

## REPORT AND RECOMMENDATION

Plaintiff Valerie Laney asserts four claims against her former employer, TPUSA, Inc., under the Florida Civil Rights Act: race discrimination; failure-to-accommodate disability discrimination, disparate treatment disability discrimination; and retaliation. TPUSA moved for summary judgment. Doc. 18. Laney responded in opposition. Doc. 20. TPUSA filed a reply. Doc. 21. The District Court should grant summary judgment for TPUSA because Laney has failed to demonstrate the existence of a genuine issue of material fact and TPUSA is entitled to judgment as a matter of law.

## I. BACKGROUND

### A. Laney's First Term of Employment with TPUSA

Laney is a black woman who worked at TPUSA's Teleperformance location in Panama City Beach, Florida. TPUSA first employed Laney in September 2016 to work as a customer service representative. Doc. 18-1 at 11, ¶ 18. But on October 6, 2016, TPUSA fired Laney because of attendance and tardiness violations. *Id.* ¶ 20.

### B. Laney's Second Term of Employment with TPUSA

On July 31, 2017, TPUSA rehired Laney to work as a full-time customer service representative at the same Panama City Beach location. *Id.* at 12. Laney continued to have attendance issues, however. For example, during Laney's training class, on August 8 and August 16, 2017, TPUSA issued Laney two warnings for attendance violations. Doc. *Id.* Between January 13, 2018, and February 15, 2019, TPUSA issued to Laney sixteen warnings for performance and attendance issues. *Id.*

#### 1. *Laney's Interactions with Manager Amanda Wright*

On February 15, 2019, Laney arrived at 10:00 a.m. for her scheduled shift. Doc. 18-3 at 15. Another employee informed Laney that she needed to complete an online "active shooter" course. *Id.* But when

Laney attempted to complete the active shooter training, she encountered technical problems. Workforce manager Amanda Wright attempted to help Laney load the training but ultimately directed Laney to complete different training. *Id.* at 18–19.

Approximately twenty minutes later, as Laney was leaving work, Wright attempted to get Laney's attention because Laney had not logged out of her work phone. *Id.* at 20–21. Wright yelled at Laney that she needed to complete the training and repeatedly asked Laney if she had logged out of the work computer and phone. *Id.* at 20–21. Laney intentionally ignored Wright. *Id.* at 21.

During this interaction, Wright remained about six feet from Laney and did not touch Laney or use any profanity. Doc. 18-3 at 20, 23. Wright also did not refer to Laney's race or medical conditions. *Id.* at 23. The entire incident was over in two or three minutes. *Id.* at 25.

**2. *Laney's Complaint About Her Interaction with Wright***

On February 16, 2019, Laney sent an email to Human Resource Coordinator Donna Robinson regarding the incident with Wright. Doc. 18-1 at 108. Although the email subject line was titled, "Hostile Work Environment," Laney did not state that she had suffered harassment,

discrimination, or retaliation based on any protected characteristic. *Id.* at 17. Rather, she asserted that Wright's conduct was "uncalled for, rude, and very unprofessional." *Id.* at 108. TPUSA investigated the allegations and coached Wright on the matter, but TPUSA determined no discrimination or harassment had occurred. *Id.* at 18.

### C. Laney Decides to Terminate Her Employment with TPUSA and Takes Extended Leave

Around February 15, 2019, Laney decided to quit her job at TPUSA. Doc. 18-3 at 30–31. She did not immediately inform TPUSA of this decision, however. Instead, Laney requested an extended personal leave of absence to obtain outpatient mental health treatment. Doc. 18-1 at 18. TPUSA granted Laney six weeks of leave through April 3, 2019. *Id.* During this period, Laney worked at Walmart. Doc. 18-3 at 29.

### D. Laney's First Charge of Discrimination

In March 2019—while Laney was on her extended leave for mental health treatment—Laney filed a charge of discrimination with the EEOC and the Florida Commission on Human Relations ("FCHR"). Doc. 1-1 at 5; Doc. 20-1 at 4–6. Laney alleged that she suffered disability discrimination in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12112 ("ADA"), from August 1, 2018, through March 18, 2019.

Doc. 20-1 at 4–6. The EEOC investigated and issued a dismissal and notice of rights on April 30, 2019. Doc. 18-5 at 2.

**E. Laney's Resignation from TPUSA**

On April 4, 2019—Laney's first day back at work after her extended leave—Laney submitted her resignation by email effective that day. Doc. 18-2 at 6. Laney sated: "The discrimination is unbearable which is why I originally took leave. Unfortunately, I cannot take the discrimination and I have decided to part ways." *Id.* As discussed below, despite this email, Laney contends that TPUSA constructively discharged her on April 4, 2019.

**F. Laney's Second Charge of Discrimination**

On June 19, 2019, Laney filed a second charge of discrimination with the FCHR and the EEOC. In it, Laney alleged race discrimination, disability discrimination, and retaliation. Doc. 18-5 at 2.

**G. This Civil Action**

On April 4, 2024—four years after Laney resigned—Laney filed this civil action in the Circuit Court of the 14th Judicial Circuit, Bay County, Florida. In light of the diverse citizenship of the parties, TPUSA removed this action to the United States District Court for the Northern District

of Florida. Laney arguably asserts four claims under the Florida Civil Rights Act ("FCRA"):

1. race discrimination, in violation of FLA. STAT. § 760.10(1)(a);

2. failure-to-accommodate disability discrimination, in violation of FLA. STAT. § 760.10(1)(a);

3. disparate treatment disability discrimination, in violation of FLA. STAT. § 760.10(1)(a); and

4. retaliation, in violation of FLA. STAT. § 760.10(7).

## II. DISCUSSION

### A. Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure states that a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004). An issue of fact is "material" if it could affect the outcome of the case. *Anderson*, 477 U.S. at 248.

## B. **The Statute of Limitations Bars Any Claims Prior to Laney's Resignation on April 4, 2019**

TPUSA argues that, in light of the applicable statute of limitations, it is entitled to summary judgment on any FCRA claims that accrued prior to April 4, 2019. Doc. 18 at 18.

Under Florida law, civil actions based on statutory liability must be commenced within four years of accrual. FLA. STAT. § 95.11(3)(e). This four-year statute of limitations generally applies to employment discrimination and retaliation claims brought under the FCRA—Florida Statutes § 760.10(1)(a), (7)—when, as in this case, the commission did not make a reasonable cause determination on a complaint within the 180 days. *See Joshua v. City of Gainesville*, 768 So. 2d 432, 439 (Fla. 2000); *Aleau v. Nova Se. Univ., Inc.*, 357 So. 3d 134, 140 (Fla. 4th Dist. Ct. App. 2023).

"A cause of action accrues when the last element constituting the cause of action occurs." FLA. STAT. § 95.031(1). The last element constituting a cause of action as to discrete acts of discrimination occurs "at the time that each of the discriminatory acts occurred." *Maggio v. Dep't of Lab. & Emp. Sec.*, 910 So. 2d 876, 879 (Fla. Dist. Ct. App. 2005).

Here, Laney alleges that she last worked for TPUSA on April 4, 2019. Doc. 18-3 at 31–32. According to Laney, any of TPUSA's alleged acts of discrimination and retaliation—other than the alleged constructive discharge—occurred prior to April 4, 2019. Thus, Laney's claims for these acts of discrimination and retaliation accrued prior to April 4, 2019. Laney did not file this civil action until April 4, 2023. Accordingly, FLA. STAT. § 95.11(3)(e) bars any claims—whether for disparate treatment, failure to accommodate her disability, or retaliation—that accrued prior to April 4, 2019.

***Laney's "Failure-to-Accommodate" Claim is Among the Claims Barred by the Statute of Limitations.*** TPUSA specifically argues that Laney's failure-to-accommodate claim is among those barred by the statute of limitations. Doc. 18 at 31. As discussed above, Laney's claims are barred to the extent they accrued prior to April 4, 2019. *See* Fla. Stat. § 95.031 ("[T]he time within which an action shall be begun under any statute of limitations runs from the time the cause of action accrues."). A failure-to-accommodate claim accrues on the date the employer denies the requested accommodation or communicates its denial to the plaintiff. *Oden v. SEPTA*, 671 F. App'x 859, 861–62 (3d Cir.

2016);[1] *Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1032 (8th Cir. 2005); *Langsford v. Yale Univ. Sch. of Med.*, 39 F. App'x 683, 685 (2d Cir. 2002); *accord Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002); *Chadon v. Fernandez*, 454 U.S. 6, 8 (1981); *Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980).

Laney testified that she had requested an "accommodation from day one," namely the ability to "leave work as needed." Doc. 18-3 at 9–10. "Day one" of Laney's second tenure at TPUSA was July 31, 2017. Doc. 18-1 at 12; Doc. 18-3 at 1. Although Laney does not specify the date or dates that TPUSA denied her requested accommodation, TPUSA clearly did so prior to April 4, 2019. Doc. 18-3 at 10. Laney testified that all of her requests to take time off were denied. *Id.* Furthermore, Laney testified that she contacted the EEOC after TPUSA would not give her time off, and this was sometime prior to February 15, 2019. *Id.* at 26.

Laney offers no evidence indicating that TPUSA denied her requested accommodation on April 4, 2019. Indeed Laney was at her

---

[1] Florida courts construe the FCRA in conformity with the ADA and apply relevant cases construing the ADA. *Wimberly v. Sec. Tech. Grp., Inc.*, 866 So. 2d 146, 147 (Fla. 4th Dist. Ct. App. 2004) (per curiam).

worksite for only two hours before she resigned, and she already had made her decision to quit on February 15, 2019. Doc. 18-3 at 30–31.

Once TPUSA satisfied "the initial burden of demonstrating the absence of a genuine dispute of material fact," the burden shifted to Laney to produce some evidence to the contrary. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011); *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010). Specifically, Laney was required to "present affirmative evidence to show that a genuine issue of material fact exists" regarding the date TPUSA denied her requested accommodation. *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006). Laney failed to do so. Accordingly, § 95.11(3)(e) bars Laney's failure-to-accommodate claim, and TPUSA is entitled to summary judgment on this claim.

**C. <u>Laney's Disparate Treatment Claims</u>**

As noted above, Laney asserts two disparate treatment claims under the FCRA:

- race discrimination, in violation of FLA. STAT. § 760.10(1)(a); and
- disability discrimination, in violation of FLA. STAT. § 760.10(1)(a).

**1. *Laney's Claim of Race Discrimination***

TPUSA next argues that Laney failed to offer evidence that she suffered an adverse employment action, which is an essential element of her race-discrimination claim. Doc. 18 at 19.

A claim of disparate-treatment race discrimination under the FCRA requires a plaintiff to establish at trial that he suffered an adverse employment action because of the employee's race. Fla. Stat. § 760.10(1)(a); *McManus v. Amerijet Int'l, Inc.*, No. 23-13554, 2024 WL 4003391, at *3 (11th Cir. Aug. 30, 2024); *Horace v. ARIA*, No. 23-12414, 2024 WL 1174398, at *5 (11th Cir. Mar. 19, 2024).

Laney contends that she suffered an adverse employment action insofar as TPUSA "constructively discharged" her on April 4, 2019. A constructive discharge "constitutes an adverse employment action." *Akins v. Fulton Cnty.*, 420 F.3d 1293, 1300–01 (11th Cir. 2005).[2] A constructive discharge occurs "when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit

[2] Decisions construing Title VII are applicable when considering claims under the FCRA, because the FCRA was patterned after Title VII. *Johnson v. Miami-Dade Cnty.*, 948 F.3d 1318, 1325 (11th Cir. 2020); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998).

his job." *Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1268 (11th Cir. 2021) (citing *Bryant v. Jones*, 575 F.3d 1281, 1298 (11th Cir. 2009)).

To create a genuine issue of material fact regrading an alleged constructive discharge, a plaintiff must submit evidence from which a reasonable jury could conclude that the plaintiff's working conditions were so intolerable that a reasonable person in the plaintiff's position "would be compelled to resign." *Kilgore v. Thompson & Brock Mgmt., Inc.*, 93 F.3d 752, 754 (11th Cir. 1996); *see Penn. State Police v. Suders*, 542 U.S. 129, 147 (2004). A constructive discharge entails "pervasive and severe conduct by the employer going beyond that required for a hostile work environment claim." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 858–59 (11th Cir. 2023). Thus, a constructive discharge requires "a high degree of deterioration in an employee's working conditions, approaching the level of 'intolerable.'" *Hill v. Winn–Dixie Stores*, 934 F.2d 1518, 1527 (11th Cir. 1991).

Here, Laney does not offer any evidence that her working conditions were so intolerable that a reasonable employee would feel compelled to resign. At best, Laney was subjected to some mild reprimands, rudeness, and perhaps petty slights. "[N]ormally petty slights, minor annoyances,

and simple lack of good manners" would not constitute adverse employment actions. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Such conduct would not cause a reasonable employee to feel compelled to resign. Any unpleasantries Laney endured did not approach the level of being "intolerable." Rather than resigning, a reasonable employee subjected to this conduct would have complained to management and would have proceeded up the chain of command to obtain a remedy. *See Garner v. Wal-Mart Stores, Inc.*, 807 F.2d 1536, 1539 (11th Cir. 1987). Laney, therefore, has failed to demonstrate the existence of a genuine issue of material fact as to the "adverse employment action" element.

**2. *Laney's Claim of Disability Discrimination***

TPUSA next argues that Laney failed to offer evidence that she suffered an adverse employment action, which is an essential element of her disability-discrimination claim. Doc. 18 at 28–29.

A claim of disparate-treatment disability discrimination under the FCRA also requires a plaintiff to establish at trial that he suffered an adverse employment action. Fla. Stat. § 760.10(1)(a); *Frazier-White v. Gee*, 818 F.3d 1249, 1255 (11th Cir. 2016); *Surtain v. Hamlin Terrace*

*Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015) (per curiam); *Evans v. Cnty. of Alachua*, 937 So. 2d 693, 694 (Fla. Dist. Ct. App. 2006).

Laney's disability-discrimination claim suffers from the same defect as her race-discrimination claim: she fails to demonstrate the existence of a genuine issue of material fact regarding the "adverse employment action" element. As discussed above, because Laney has not directed this court to evidence that indicates that TPUSA constructively discharged Laney, she has failed to show that there is a genuine issue regarding an essential element of her claim. For this reason, Laney's disparate treatment disability discrimination claim fails.

**D. <u>Laney's Retaliation Claim</u>**

Laney also asserts a retaliation claim under the FCRA. Laney claims that TPUSA retaliated against her for two events: (1) on March 19, 2019, Laney filed a charge of discrimination with the EEOC and the FCHR; and (2) in March 2019, Laney helped a coworker, Gabrielle D. Parker, contact the EEOC and file a charge of race discrimination.

A claim of retaliation under the FCRA entails at least the following elements:

> (1) the plaintiff opposed an unlawful employment practice or made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under FLA. STAT. § 760.10;
>
> (2) the defendant knew that the plaintiff acted in this fashion;
>
> (3) the plaintiff suffered an adverse employment action; and
>
> (4) but for the plaintiff's act of opposition, making a charge, testifying, *etc.*, the defendant would not have taken the materially adverse action.

Fla. Stat. § 760.10(7);[3] *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013); *Jiles v. United Parcel Serv., Inc.*, 360 F. App'x 61, 65 & n.5 (11th Cir. 2010); *Goldsmith v. Bagby Elevator Co.*, 513 F.3d 1261, 1277 (11th Cir. 2008); *Brungart v. BellSouth Telecomms., Inc.*, 231 F.3d 791, 799 (11th Cir. 2000); *Goldsmith v. City of Atmore*, 996 F.2d 1155, 1163 (11th Cir. 1993).

[3] Because the anti-retaliation provision of the FCRA is similar to its counterpart in Title VII, 42 U.S.C. § 2000e-3(a), "Florida courts follow federal case law when examining FCRA retaliation claims." *Carter v. Health Mgmnt. Assocs.*, 989 So. 2d 1258, 1262 (Fla. Dist. Ct. App. 2008).

**1. *Laney Fails to Demonstrate the Existence of a Genuine Issue Regarding TPUSA's Knowledge that Laney Assisted Her Co-Worker in Filing a Charge of Discrimination***

As to any retaliation claim based on Laney's assistance to her co-worker in filing a charge of discrimination with the EEOC, TPUSA argues that it could not have retaliated against Laney for this because—as Laney conceded in her deposition—she has no evidence that TPUSA knew Laney had assisted her co-worker prior to Laney's decision to quit. Doc. 18-3 at 27.

Under the FCRA, retaliation is an intentional act by an employer to punish an employee for opposing acts of discrimination. Thus, a plaintiff must establish that the defendant was "actually aware" of plaintiff's participation in protected activity. *Clover v. Total Sys. Servs., Inc.*, 176 F.3d 1346, 1353 (11th Cir. 1999). After all, a "decision maker cannot have been motivated to retaliate by something unknown to him." *Brungart*, 231 F.3d at 799.

Here, during her deposition, Laney conceded that she has no evidence that TPUSA knew she assisted her co-worker in filing a complaint of discrimination with the EEOC. Doc. 18-3 at 27. Without evidence—direct or circumstantial—of TPUSA's knowledge on this point,

Laney cannot demonstrate the existence of a genuine issue of material fact regarding this essential element. For that reason alone, this portion of Laney's retaliation claim fails.

### 2. *Laney Fails to Identify Any Adverse Employment Action that TPUSA Inflicted on Laney as Retaliation*

TPUSA also argues that, as to both facets of Laney's retaliation claim, Laney has failed to demonstrate the existence of a genuine issue regarding an essential element of a retaliation claim: infliction of an adverse employment action. Doc. 18 at 35.

As to this element, for purposes of a retaliation claim, a materially adverse action means one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Crawford v. Carroll*, 529 F.3d 961, 974 (11th Cir. 2008) (quoting *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. at 68). This is a "more liberal view of what constitutes an adverse employment action" than in the discrimination context. *Id.*

As discussed above, Laney lacks evidence from which a reasonable jury could conclude that TPUSA constructively discharged her. Laney does not identify any other adverse action that she suffered at TPUSA's

hands within the period relevant for purposes of the statute of limitations. For this reason, therefore, Laney's retaliation claim fails.

## IV. CONCLUSION

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that the District Court:

1. **GRANT** Defendant's motion for final summary judgment; and

2. **DIRECT** the Clerk of the Court to close the file.

At Pensacola, Florida, this 16th day of December 2024.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

## NOTICE TO THE PARTIES

**The District Court referred this case to the undersigned to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b). Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the findings or recommendations contained in this report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**